**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CV-60876-RAR**

**RONALD BAKER**,

       Petitioner,

v.

**RICKY D. DIXON**, **SECRETARY,**
**FLORIDA DEPARTMENT OF CORRECTIONS**,

       Respondent.[1]

_____/

**ORDER DENYING IN PART AND DISMISSING IN PART**
**HABEAS CORPUS PETITION**

      **THIS CAUSE** is before the Court on a *pro se* Amended Petition for Writ of Habeas

Corpus, filed pursuant to 28 U.S.C. § 2254, challenging Petitioner's convictions and sentences

imposed by the Seventeenth Judicial Circuit Court in and for Broward County, Florida, in Case

No. 12-5496CF10A. *See* Amended Petition [ECF No. 7] ("Am. Pet."). Respondent filed a

Response to the Amended Petition, *see* Response to Order to Show Cause ("Response") [ECF No.

12], and Petitioner filed a Reply, [ECF No. 19].

      Having carefully reviewed the record and governing law, and for the reasons set forth

below, the Court **DISMISSES** Grounds 7 and 9 of the Amended Petition and **DENIES** the

remaining grounds for relief.

---

[1] The original Respondent in this case, Mark S. Inch, retired from his position as Secretary of the Florida Department of Corrections on November 19, 2021. Former Secretary Inch's successor, Ricky D. Dixon, has been automatically substituted as the Respondent. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). The Clerk's Office is **DIRECTED** to make this modification on the docket.

## PROCEDURAL HISTORY

On November 12, 2008, Petitioner was charged by Information in Case No. 08-19713CF10A with twenty-one counts: two counts of sexual battery by a person with familial or custodial authority, in violation of Fla. Stat. § 794.011(8)(b); four counts of lewd or lascivious molestation, in violation of Fla. Stat. § 800.04(5); one count of lewd or lascivious exhibition, in violation of Fla. Stat. § 800.04(7); seven counts of using a child in a sexual performance, in violation of Fla. Stat. § 827.071(2); and seven counts of possessing images of a sexual performance by a child, in violation of Fla. Stat. § 827.071(5). *See* Information [ECF No. 13-1] at 5–11. The Information alleged that, between August 2003 and October 2008, Petitioner engaged in multiple instances of illegal sexual activity with "T.B.," a minor child who was also Petitioner's biological daughter. *See generally id.*

On April 13, 2012, the State filed a new Information in Case No. 12-5496CF10A, which superseded the original Information and charged Petitioner with additional counts related to earlier alleged instances of sexual misconduct dating back to July 2000. *See generally* Second Information [ECF No. 13-1] at 13–23. This Second Information now charged Petitioner with twenty-seven counts: three counts of sexual battery by a person with familial or custodial authority, in violation of Fla. Stat. § 794.011(8)(b) (Counts 1–3); eight counts of lewd or lascivious molestation, in violation of Fla. Stat. § 800.04(5) (Counts 4–8, 10–12); one count of lewd or lascivious conduct, in violation of Fla. Stat. § 800.04(6) (Count 9); one count of lewd or lascivious exhibition, in violation of Fla. Stat. § 800.04(7) (Count 13); seven counts of using a child in a sexual performance, in violation of Fla. Stat. § 827.071(2) (Counts 14–20); and seven counts of possessing images of a sexual performance by a child, in violation of Fla. Stat. § 827.071(5) (Counts 21–27). *See id.* Just four days after the Second Information was filed, Petitioner's defense

attorney filed a motion to sever the six new counts from the Second Information that were not present in the original Information (Counts 3 and 8–12), arguing that "[t]he Defense did not have an opportunity to investigate the new allegations" and that "[i]f the Defendant is required to meet all these charges in one hearing he will be prejudiced and injured in his defense."  Motion to Sever [ECF No. 13-1] at 42–43.  The state trial court denied the Motion to Sever two days later.  Order Denying Motion to Sever [ECF No. 13-1] at 45.

Petitioner proceeded to trial on all twenty-seven counts of the Second Information.  On May 9, 2012, a Broward County jury found Petitioner guilty of all but one count (Count 26) as charged in the Second Information.  *See* Verdict [ECF No. 13-1] at 47–72.  The state trial court adjudicated Petitioner guilty in accordance with the jury's verdict and sentenced Petitioner to thirty (30) years on Count 1, a life sentence on Counts 2 and 3, fifteen (15) years on Counts 4–10, two more life sentences for Counts 11 and 12,[2] five (5) years on Count 13, fifteen (15) years on Counts 14–20, and five (5) years on Counts 21–25 and 27.  *See* Sentencing Orders [ECF No. 13-1] at 91–168.

Petitioner appealed his convictions and sentences to Florida's Fourth District Court of Appeal ("Fourth DCA").  Petitioner raised three arguments on direct appeal: (1) "the trial court erred in denying Defendant's motion to suppress where the search warrant affidavit was lacking in probable cause and contained material misrepresentations[,]" Direct Appeal Initial Brief [ECF No. 13-1] at 190; (2) the trial court erred in denying Petitioner's severance motion "where the additional charges alleged to have taken place . . . were added less than three weeks before [the]

---

[2]  The life sentences on Counts 11 and 12 were later reduced to sixty-five (65) year sentences.  *See Baker v. State*, 221 So. 3d 1197, 1198 (Fla. 4th DCA 2017) (reversing and remanding case for resentencing "on counts one, two, three, eleven, and twelve").

jury trial," *id.* at 195; and (3) the trial court failed to hold "an adequate *Richardson*[3] hearing when Defendant argued the State failed to provide him with the dates and times the photographs were posted on the computer," *id.* at 197.  On May 8, 2014, the Fourth DCA summarily affirmed the state trial court in an unwritten opinion.  *See Baker v. State*, 138 So. 3d 1036 (Fla. 4th DCA 2014).

After his conviction was affirmed, Petitioner returned to the Fourth DCA on August 8, 2014,[4] by filing a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel, as required by Fla. R. App. P. 9.141(c).  *See* State Habeas Petition [ECF No. 13-1] at 269–80.  Petitioner then amended his state habeas petition to include the following two claims: (1) appellate counsel failed to argue that "the trial court committed fundamental error while instructing the jury" on Counts 1, 7, 9, and 10, Amended State Habeas Petition [ECF No. 13-2] at 7; and (2) appellate counsel was ineffective "when he failed to brief issues relating to the trial court departing from its role as an impartial, neutral arbiter," *id.* at 16.  On August 25, 2015, the Fourth DCA summarily denied Petitioner's state habeas corpus petition in a one-sentence order.  *See* Order Denying State Habeas Petition [ECF No. 13-2] at 37 ("ORDERED that the August 12, 2014 petition alleging ineffective assistance of counsel is denied.").

Petitioner then filed a second habeas petition with the Fourth DCA on December 31, 2015, again alleging ineffective assistance of appellate counsel.  *See* Second State Habeas Petition [ECF No. 13-3] at 2–43.  This second state habeas petition raised the same two claims from Petitioner's first state habeas petition as well as one new claim: that appellate counsel was ineffective for failing to argue that the trial court abused its discretion "when it denied a defense motion for a continuance

---

[3] *See Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

[4] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

needed to investigate and obtain newly discovered evidence of [an] alibi." *Id.* at 23. Once again, the Fourth DCA summarily denied this Second State Habeas Petition. *See* Order Denying Second State Habeas Petition [ECF No. 13-3] at 45.

Thereafter, on February 3, 2016, Petitioner filed a motion for postconviction relief in the state trial court pursuant to Fla. R. Crim. P. 3.850. *See* Motion for Postconviction Relief [ECF No. 13-2] at 135–85. Petitioner then amended his motion for postconviction relief several times until he filed the operative "Third Amended Motion for Post-Conviction Relief" (hereinafter, the "Postconviction Motion"). *See* Postconviction Motion [ECF No. 13-2] at 187–231. The Postconviction Motion alleged ten grounds of relief: (1) trial counsel was ineffective for failing to "move the Court for dismissal of counts charged in the Information which were beyond the statute of limitations period[,]" *id.* at 190; (2) trial counsel was ineffective for failing to "strike prospective jurors who demonstrated a predisposed prejudice against the defendant[,]" *id.* at 193; (3) trial counsel was ineffective for failing to "investigate Defendant's alibi defense through employment records and obtaining state computer forensic reports," *id.* at 197; (4) trial counsel was ineffective for failing to "investigate and obtain forensic experts in scientific fields in order to refute the State's evidence and develop a viable trial strategy[,]" *id.* at 200; (5) trial counsel was ineffective for failing to investigate "a severe break in the chain of custody" as it relates to "the computer and digital media seized," *id.* at 209; (6) trial counsel was ineffective for giving "affirmative misadvise that [Petitioner's] testimony on the alibi could be disallowed by the court," which prevented Petitioner from exercising his right to testify at trial, *id.* at 215; (7) trial counsel was ineffective for failing to file an adequate motion "to recuse the trial court for abandoning its role as a neutral, impartial arbitrator[,]" *id.* at 216; (8) trial counsel was ineffective "when he failed to make contact with and depose a witness who would have provided trial testimony directly refuting statements

made by the alleged victim[,]" *id.* at 218; (9) trial counsel was ineffective for failing to "object to the court's imposition of an illegal sentence on Counts [2, 3, 11, and 12,]" *id.* at 221; and (10) the State deliberately "withheld critical exculpatory evidence . . . [which] would have established an alibi defense, exposed gross misconduct committed by law enforcement, and would have damaged the alleged victim's credibility[,]" *id.* at 225.

On January 11, 2018, the State filed a Response to Petitioner's Postconviction Motion. *See* State's Response [ECF No. 13-2] at 233–66. The State conceded that the court should partially grant relief on Ground 1 of the Postconviction Motion because Counts 1 and 9 of the Information charged Petitioner with conduct that was beyond the relevant statute of limitations. *See id.* at 237 ("The report date [for Counts 1 and 9] occurred on October 9, 2008. This meant that the State had up to October 9, 2011, to charge Defendant with these offenses. The State filed the new charging document on April 13, 2012. Therefore, the State could not have charged Defendant with these offenses because they were outside of the time limitations period, and the conviction for these counts should be vacated."). However, the State urged the state court to deny the remainder of the Postconviction Motion. *See id.* at 266 ("[T]he State respectfully requests this Honorable Court . . . DENY Ground One as it relates to the counts eight, 10, 11, and 12 of the Information and DENY the remaining claims in Grounds Two through Ten of Defendant's [Postconviction Motion].""). On January 9, 2020, the state court granted in part and denied in part the Postconviction Motion "for the reasons contained in the State's response." Order Denying Postconviction Motion [ECF No. 13-2] at 268. Petitioner appealed the denial of his remaining claims to the Fourth DCA, but the state appellate court affirmed the state trial court in an unwritten opinion. *See Baker v. State*, 308 So. 3d 130 (Fla. 4th DCA 2020). The Fourth DCA's mandate issued on January 8, 2021. *See* Postconviction Mandate [ECF No. 13-2] at 282.

Petitioner filed his initial § 2254 Petition on April 19, 2021, *see* Petition [ECF No. 1], and then filed the operative Amended Petition on May 20, 2021.  The Amended Petition raises the following nine grounds for relief:

1. **Ground One**: The trial court "denied [Petitioner's right] to due process . . . when the trial court denied Petitioner's motion to suppress search warrants." Am. Pet. at 4.

2. **Ground Two**: The trial court violated Petitioner's due process rights when it "denied Petitioner's motion to sever counts that were added three weeks before trial and occurred during a previously uncharged time period." *Id.* at 6.

3. **Ground Three**: Trial counsel was ineffective for failing to "investigate six counts charged after the expiration of their statute of limitation period." *Id.* at 8.

4. **Ground Four**: Trial counsel was ineffective for failing "to investigate [an] employer based alibi." *Id.* at 9.

5. **Ground Five**: Trial counsel was ineffective "when counsel misadvised Petitioner on a state statute resulting in Petitioner's decision not to testify in his trial." *Id.* at 11.

6. **Ground Six**: Trial counsel was ineffective for "failing to investigate a nine hour break in the chain of custody of a seized computer and evidence[.]" *Id.* at 12.

7. **Ground Seven**: The state postconviction court violated Petitioner's due process rights by denying "Petitioner's claim of newly discovered evidence of prosecutorial misconduct involving a Brady[5] violation." *Id.* at 14.

8. **Ground Eight**: Appellate counsel was ineffective for failing to argue that "the trial court erred in denying Petitioner's motion for continuance to investigate newly discovered evidence of [an] employer based alibi." *Id.* at 16.

9. **Ground Nine**: The cumulative effect of the aforementioned errors "justify the convictions [being] reversed[.]" *Id.* at 17.

## STANDARD OF REVIEW

### A.  Review Under 28 U.S.C. § 2254

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a

---

5  *See Brady v. Maryland*, 373 U.S. 83 (1963).

writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Some of the more restrictive limits are found in § 2254(d). Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted). A state court's decision qualifies as an "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up). "'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472

(2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA."). The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions. *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). This is because federal courts ordinarily presume that § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum. *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added). From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v.*

*Davenport*, 142 S. Ct. 1510, 1524 (2022).  In other words, a habeas petitioner must <u>also</u> satisfy *Brecht*, even if AEDPA applies.  *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA.  But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

### B.  Ineffective Assistance of Counsel Claims

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense."  *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).  This same standard applies to errors made by both trial counsel and appellate counsel.  *See Grubbs v. Singletary*, 120 F.3d 1174, 1176 (11th Cir. 1997).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings. *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## PROCEDURAL REQUIREMENTS

### A. Timeliness

Generally, "a person in custody pursuant to the judgment of a State court" has a one-year period to file a habeas corpus petition. *See* 28 U.S.C. § 2244(d)(1). Respondent agrees that only 103 days of untolled time elapsed under AEDPA's limitations period and that the Amended Petition is timely. *See* Response at 4 ("[T]he State acknowledges that this petition was timely filed."). Since Respondent has waived any objection to the timeliness of the Petition, the Court will construe the Amended Petition as timely filed. *See Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a state intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

### B. Exhaustion

Pursuant to 28 U.S.C. § 2254(b)–(c), habeas petitioners must also exhaust their claims before presenting them in a federal habeas petition. *See Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("Plainly, the purpose of the exhaustion requirement is to afford the state court 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). This requirement is met if a petitioner "fairly present[ed] every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned

up).  "If a petitioner fails to 'properly' present [their] claim to the state court—by exhausting [their] claims and complying with the applicable state procedure—prior to bringing [their] federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim."  *Id.*  In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original).  "In Florida, exhaustion usually requires not only the filing of a [Florida Rule of Criminal Procedure 3.850] motion, but an appeal from its denial."  *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (quoting *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)).

Similar to a limitations defense, the respondent also has the option to waive an exhaustion defense.  *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").  Here, Respondent concedes that the majority of the claims in the Amended Petition have been exhausted—specifically, Grounds 1–6 and 8.  *See* Response at 7–9.  Having waived any procedural objections to the majority of the Amended Petition's claims, the Court shall review these grounds for relief on their merits without independently analyzing their exhaustion status.  *See Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion.") (cleaned up).

However, the Respondent has specifically raised an exhaustion defense as to Grounds 7 and 9 of the Amended Complaint and requests that the Court dismiss these claims as procedurally defaulted.  As for Ground 7, Respondent asserts that "[t]his claim was not raised in Petitioner's third amended rule 3.850 motion, so it was not exhausted.  Petitioner notes that he raised this claim

in his second amended rule 3.850 motion, but that motion was abandoned when he filed his third amended rule 3.850 motion before the trialed [sic] court entered a ruling."  Response at 8. Respondent presents a similar argument for Ground 9, claiming that, it too, was never "raised in Petitioner's third amended rule 3.850 motion[.]"  *Id.* at 9.  The Court will address each of these exhaustion arguments.

       1.  *Ground 7 is Barred Under the Independent and Adequate State Ground Doctrine*

In Ground 7 of the Amended Petition, Petitioner alleges that the State "deliberately suppressed from discovery a computer forensic examination report (CFR) that possessed both exculpatory and impeachment evidence."  Am. Pet. at 14.  According to Petitioner, a portion of this CFR indicated that two of the charged pornographic images were placed on the family computer at 8:59 AM on May 5, 2008, and 9:28 AM on April 16, 2008.  *See id.*  These specific times and dates are important because the State purportedly "knew Petitioner was at work during these times, and the victim was at home alone where the subject computer was kept.  These dates were subsequently confirmed through certified employment records."  *Id.* at 14–15.  Petitioner claims that the State's suppression of this potentially exculpatory information violated the Supreme Court's holding in *Brady*, and that the state postconviction court erred in failing to hold an evidentiary hearing on this "newly discovered evidence."  *See id.* at 14.

The Court disagrees with Respondent's premise that "[t]his claim was not raised in Petitioner's third amended rule 3.850 motion[.]" Response at 8.  Ground Ten of the Postconviction Motion claims that the State possessed a "computer forensics report" which would demonstrate "the basis for an alibi defense because Defendant was at work when they were placed on the computer."  Postconviction Motion [ECF No. 13-2] at 227.  Petitioner also asserts that the State's failure to disclose this forensic report violated *Brady* and his due process rights under the

Fourteenth Amendment.  *See id.* at 228.  Ground Ten of the Postconviction Motion and Ground 7 of the Amended Petition are "substantially the same" for exhaustion purposes.  *Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003).

However, the Court still concludes that the claim has been procedurally defaulted under the "independent and adequate state procedural ground" doctrine.  This doctrine precludes a federal court from reviewing a petitioner's habeas claims—even if it raises valid matters of federal constitutional law—if "(1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds."  *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up).  In denying Ground Ten of the Postconviction Motion, the state postconviction court adopted the reasoning of the State's Response, which argued that:

> [T]his is a time barred claim even if it had been one that could have been addressed in a Rule 3.850 motion.  A Rule 3.850 motion must be timely filed, which is two (2) years from the date the highest court issues its proclamation for a direct appeal, or within two (2) years of the final judgment when there is no direct appeal.
>
> The Court imposed Defendant's sentence in this case on June 15, 2012. . . . The Fourth District Court of Appeal affirmed the sentence on May 8, 2014, and issued its Mandate on June 6, 2014.  Therefore, a Rule 3.850 Motion would be considered timely filed up to June 6, 2016, for the above-styled case.
>
> [Defendant] filed a timely Motion for Post-Conviction Relief, which included seven claims of relief, on or about February 9, 2016.  Defendant then filed a timely Amended Motion for Post-Conviction Relief on or about April 22, 2016, which included nine claims of relief.  Defendant then filed a Second Amended Motion for Post-Conviction Relief and Third Amended Motion for Post-Conviction Relief on or about January 9, 2017, and March 30, 2017, respectively.  Defendant filed these motions past the two-year time period to file a timely post-conviction motion based on the date of the Mandate from the appellate court.

State's Response [ECF No. 13-2] at 265 (internal citations omitted).

Under Florida's procedural rules, a Rule 3.850 postconviction motion cannot be filed "more than 2 years after the judgment and sentence become final[.]" Fla. R. Crim. P. 3.850(b). Although an amended rule 3.850 generally relates back to the original postconviction motion's filing date, any "[n]ew claims for relief contained in an amendment need not be considered by the court unless the amendment is filed within the time frame specified in subdivision (b)." *Id.* 3.850(e); *see, e.g.*, *Venable v. State*, 227 So. 3d 644, 645 (Fla. 4th DCA 2017) ("The first two claims relate back to the original motion, which was timely filed. . . . The third claim does not relate back to the original motion, and it was not timely filed within the two-year time limit for rule 3.850(b) motions.").

The state postconviction court found that the substance of Ground 7 was not raised until January 19, 2017—a point which Petitioner does not dispute. *See* Am. Pet. at 15 ("Petitioner filed this issue as Ground Ten on January 19, 2017 in his Second Amended Motion for Post Conviction Relief."). The state postconviction court concluded that this claim was time-barred pursuant to Rule 3.850(b)'s time limits; consequently, the Court must find that Ground 7 has been procedurally defaulted because it was disposed of under an independent and adequate state procedural ground.[6] *See LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005) ("[T]he procedural requirements of Florida's Rule 3.850 constitute independent and adequate grounds under the applicable law."); *Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 692–93

---

[6] In his Amended Petition, Petitioner argues that this claim <u>was</u> timely under Rule 3.850(b). He asserts that he did not discover the CFR until August 13, 2015, and that Rule 3.850(b)(1) would have allowed him to file this "newly discovered evidence" claim on or before August 13, 2017. Am Pet. at 15; *see also* Fla. R. Crim. P. 3.850(b)(1) (allowing a claim of newly discovered evidence to proceed if "the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence"). True or not, the state court has already determined that this claim was untimely under state law, and this Court is powerless to second-guess a state court's dispositive rulings based solely on state law. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

(11th Cir. 2020) (holding the denial of a claim as untimely under Rule 3.850(b) "rested on an independent and adequate state procedural ground").  Ground 7 is thus **DISMISSED**.

### 2.  *Ground 9 is Unexhausted*

Ground 9, on the other hand, is plainly unexhausted.  Petitioner asserts a claim of cumulative error, arguing that "each ground raised in [the Amended Petition] provides sufficient evidence to establish that any combination of grounds raised had sufficient effect on the outcome of the trial to justify the convictions reversed based on the cumulative effects of the errors raised." Am. Pet. at 17.  Respondent again avers that a cumulative error claim was "not raised in Petitioner's third amended rule 3.850 motion, so it has not been exhausted."  Response at 9.  Unlike Ground 7, the Court's review of the Postconviction Motion confirms that Petitioner did not raise a cumulative error therein.  *See generally* Postconviction Motion [ECF No. 13-2] at 187–230; *see also Hart v. Dunn*, No. 01-00231, 2015 WL 6755304, at *11 (S.D. Ala. Nov. 4, 2015) ("[The cumulative error claim] does not satisfy the exhaustion requirement.  The issue was not raised in the [state-court postconviction motion] and, therefore, was not preserved for state appellate review.").  Having failed to exhaust the substance of Ground 9 in state court, the Court finds that the claim is procedurally defaulted and must be **DISMISSED**.[7]

### 3.  *No Exceptions to the Procedural Default Rule Apply*

Although Grounds 7 and 9 have been procedurally defaulted, Petitioner could avail himself of the two equitable exceptions to the procedural default rule: "cause and prejudice" and "actual innocence."  *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain

---

[7]  Even if Ground 9 was exhausted, the Court would still deny the claim on its merits because, as discussed *infra*, Petitioner is not entitled to relief on any of his other claims.  *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) ("Morris's cumulative error claim must fail.  As demonstrated above, none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate.").

a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default.  We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense.").  To demonstrate "cause and prejudice," Petitioner must show that "some objective factor external to the defense impeded the effort to raise the claim properly in the state court[,]" and that, had the claim been properly raised, "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). In contrast, the actual innocence exception can only be met when the petitioner provides new evidence showing that "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Neither of these exceptions have been met.  Petitioner bears the sole burden of proving that either one of these exceptions would excuse a procedural default, and Petitioner has failed to allege that either one applies.  *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]") (cleaned up).  Insofar as Petitioner might allege that the CFR is newly discovered evidence which proves his "actual innocence," that exception only applies if Petitioner provides new evidence that demonstrates "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  The CFR is not so compelling that it would prove Petitioner's factual innocence of the charges in the Second Information and make it "more likely than not that no reasonable jury

would have convicted him of the underlying offense[s]." *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). Accordingly, Grounds 7 and 9 are properly dismissed.

## ANALYSIS

Having determined that all but Grounds 7 and 9 of the Amended Petition have been exhausted, the Court will now analyze each claim on its merits. In applying the standard of review set out in § 2254(d), the Court must review the reasonableness of the factual findings and legal conclusions made by "the highest state court decision reaching the merits of a habeas petitioner's claim[.]" *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008). Although the Fourth DCA was the highest court to review all of Petitioner's claims on the merits, it did not issue a written opinion explaining its reasoning. *See Baker*, 138 So. 3d at 1036; *Baker*, 308 So. 3d at 130. Accordingly, the Court must "'look-through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192.

Each of the claims in the Amended Petition require the Court to "look-through" to something different each time. Grounds 1 and 2, for example, challenge determinations made by the state trial court after substantial evidentiary hearings. *See generally* Severance Hr'g Tr. [ECF No. 14-2]; Suppression Hr'g Tr. [ECF No. 14-3]. Although the Fourth DCA summarily affirmed the trial court on both of these issues, *see Baker*, 138 So. 3d at 1036, the Court presumes that the Fourth DCA adopted the state trial court's post-hearing oral pronouncements and will review the reasonableness of those decisions, *see, e.g.*, *Renford v. Dixon*, No. 20-60669-CIV, 2022 WL 2046849, at *8 (S.D. Fla. June 7, 2022) ("Since the trial court held a lengthy evidentiary hearing on this issue—and then denied this claim on the merits—we presume that the Fourth DCA adopted the trial court's findings.") (parenthetical omitted).

For Grounds 3–6, which re-raise issues from the Postconviction Motion, the state postconviction court did not make its own independent findings and instead adopted the legal reasoning of the State's Response as its own. *See* Order Denying Postconviction Motion [ECF No. 13-2] at 268 ("ORDERED and ADJUDGED that [the Postconviction Motion] is hereby GRANTED in part and DENIED in part, for the reasons contained in the State's response[.]"). As a result, the Court "shall review the reasonableness of the State's Response as it is the presumptive reasoning of both the Fourth DCA and the state postconviction court." *Young v. Florida*, No. 20-CV-61074, 2022 WL 2834668, at *5 (S.D. Fla. July 20, 2022).

In contrast, Ground 8 raises an ineffective assistance of appellate counsel claim that was only reviewed by the Fourth DCA and denied on its merits in a one-sentence summary order. *See* Order Denying Second State Habeas Petition [ECF No. 13-3] at 45 ("ORDERED that the January 6, 2016 petition alleging ineffective assistance of appellate counsel is denied."). In this unique circumstance, the Court must "review the record before the [Fourth DCA] to determine what arguments or theories supported or, as here, could have supported, the state court's decision." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1232 (11th Cir. 2014) (cleaned up). The petitioner still bears the "burden [ ] to demonstrate that there was no reasonable basis for the decision of [the state court] to deny his claim." *Tarleton v. Sec'y, Fla. Dep't of Corr.*, 5 F.4th 1278, 1291 (11th Cir. 2021). The Court will now address each remaining ground of the Amended Petition in turn.

### A. *Ground 1*

In Ground 1 of the Amended Petition, Petitioner alleges that the trial court erred in denying his motion to suppress all evidence that was found incident to a search warrant of Petitioner's home. *See* Am. Pet. at 4–5. Petitioner identifies two purported flaws with the search warrant. First, Petitioner claims that the affiant who sought the search warrant, Detective James P. Olczak

of the Sunrise Police Department, "primarily was relying upon the fact that [T.B.], a month prior to October 9, 2008, had seen a nude photograph of herself on the family computer." *Id.* at 5. Petitioner avers that this, alone, did not create probable cause for a warrant because "[t]here was no allegation that the photo depicted any sexual or lewd or lascivious conduct . . . . Further there were no allegations as to who took the photograph, when it was taken, when it was loaded onto the computer, etc." *Id.* Second, Petitioner also alleges that the affidavit supporting the application for the search warrant "contained false allegations[.]" *Id.* Petitioner claims that the "affidavit erroneously alleges that Ms. Love [T.B.'s grandmother and Petitioner's mother] observed Petitioner hugging T.B., grabbing her buttocks and placing his head against T.B.'s breasts[,]" but that Ms. Love's actual statement to the police contained none of these allegations. *Id.* Respondent notes that the state trial court held "an extensive evidentiary hearing" on the motion to suppress and the Court should find the state trial court's adjudication of the motion to suppress was reasonable. Response at 14–15.

The Fourth Amendment of the Constitution forbids a judge from issuing a search warrant unless there are "sufficient facts to establish probable cause" that a crime occurred. *United States v. Robinson*, 62 F.3d 1325, 1330–31 (11th Cir. 1995). In determining whether probable cause exists, "the issuing magistrate 'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (alterations in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The Court must "accord great deference to [a] judicial determination of probable cause to issue a search warrant." *Robinson*, 62 F.3d at 1331.

The search warrant authorizing the search of Petitioner's computer tower relied upon an affidavit which contained the following factual allegations:

> On October 9, 2008, the Sunrise Police Department was contacted regarding lewd conduct between Ronald Baker, aged 46, and his seventeen year-old daughter, [T.B.]  They reside at [redacted] with Mr. Baker's mother, Beatrice Love.
>
> Ms. Love observed Mr. Baker hugging [T.B.]  While doing so, he was grabbing the child's buttocks and had his head against her breasts.  Alarmed, Ms. Love contacted a relative who later notified the Sunrise Police Department.
>
> Detectives Hall and Fernandez interviewed [T.B.]  She revealed Mr. Baker had performed oral sex on her and encouraged her to perform oral sex on him.  [T.B.] said she had also watched Mr. Baker ejaculate on several occasions and had showered with him, during which time he fondled her breasts, buttocks, and vaginal area.  [T.B.] also said she had masturbated in Mr. Baker's presence and had manually brought him to sexual climax.  These acts have been ongoing for the last few years.
>
> [T.B.] also revealed she had discovered a nude photograph of herself on the family's computer.  She saw the photograph on the computer approximately one month ago.  The nature of this photograph and the inappropriate acts described by the victim child suggest there may be additional evidence on said computer and/or images of additional minors/victims.  My training and experience in these cases leads me to believe offenders against minors often keep images as trophies to remind them of their victims.

Search Warrant Affidavit [ECF No. 13-1] at 35–36.

On July 23, 2010, Petitioner's defense counsel filed a motion to suppress the fruits of that search warrant.  *See* Motion to Suppress [ECF No. 13-1] at 25–30.  In that motion, defense counsel argued the only evidence "used to establish probable cause for the search warrant of [Petitioner's] computer is [T.B.'s] statement that one month earlier she observed a nude picture of herself on the family computer." *Id.* at 28.  Counsel argued that this statement was insufficient because T.B. "gave no indication of any lewd or abusive intent connected with the photo she had seen on the

computer[,]" nor did the affidavit "describe the photo in any detail from which lewd or abusive intent [could] be inferred." *Id.* At the subsequent suppression hearing, defense counsel also raised a second argument that the search warrant was defective because the affidavit supporting the search warrant application contained false statements. *See* Suppression Hr'g Tr. [ECF No. 14-3] at 109–10 ("One of the deputies needed to prepare and gave to [Judge] Kaplan. In this particular case, he indicated . . . that Ms. Love observed Mr. Baker hugging T.B. While doing so, he was grabbing the child's buttocks and had his head leaned against her breasts. And that very, specifically, is directly contradicted by T.B. that the hand, and the grandmother's statement, T.B. had indicated that he was not holding her butt.") (errors in original).

The state trial court's suppression hearing spanned over two days. Defense counsel only called one witness, Detective Olczak, but also relied upon the statements T.B. and Ms. Love made to the Sunrise Police Department in 2008. Detective Olczak admitted that he drafted the search warrant application based on what he was told by other officers; he did not personally speak to T.B. or Ms. Love, nor did he review their statements. *Id.* at 11. The detective also admitted that he did not describe the nature of the photograph in the affidavit, but insisted that the photo itself was sufficiently lewd to establish probable cause. *See id.* at 15 ("Q: And what did you specifically know about the photograph? A: That there was a picture of [T.B.] nude that she encountered. I believe a dog collar was mentioned."). Detective Olczak explained that T.B. had found a nude photo of herself on the family computer and that the victim had described years of sexual abuse at the hands of Petitioner—including specific allegations that Petitioner may have administered drugs to T.B. *Id.* at 22, 26–27, 33–34. Based on his training and experience, Detective Olczak concluded there was a high likelihood that "there could be more photographs of a similar nature" on the computer because of T.B.'s allegations of sexual abuse. *Id.* at 22–23, 29. Detective Olczak agreed,

however, that many of the details he learned over the course of the investigation were not included in the search warrant affidavit. *Id.* at 37–38, 43–44.

The statements made by T.B. and Ms. Love were played on the second day of the suppression hearing. T.B. alleged that Petitioner began to sexually abuse her starting when she was in seventh or eighth grade. *Id.* at 54. T.B. told law enforcement that Petitioner had, among other things: gotten in the shower with her and touched her vagina, breasts, and buttocks, *id.* at 57–58, 71–73; "forced" T.B. to take sleeping pills and would hit her if she refused to comply, *id.* at 59; asked T.B. on a "daily" basis to "show him my boobs," *id.* at 66; and made T.B. perform oral sex, receive oral sex, or assist Petitioner with masturbation, *id.* at 75–76, 82–83. T.B. suspected that Petitioner had performed additional sexual acts on her, but that she could not say for certain because Petitioner forced her to take sleeping pills prior to these encounters. *Id.* at 67–69, 80–81. T.B. also explained that Petitioner had frequently asked her if "you think your friends would sleep with me?" *Id.* at 90. In Ms. Love's statement, she described an incident where she walked into the kitchen and observed T.B. "standing between [Petitioner's] legs, between his knees. And he had his hands around her legs, not back. And he was positioned with his hand right underneath her buttocks." *Id.* at 96. She then observed Petitioner and T.B. get into a verbal altercation. *Id.* at 97–98. The situation unnerved Ms. Love so much that she called her other son, a policeman named John, to speak with T.B—that's when T.B. informed John about Petitioner's abuse. *Id.* at 99–100.

After hearing the testimony and the oral arguments of both sides, the state trial court made a lengthy ruling from the bench denying the motion to suppress. The trial court first found that "nothing has been presented in these hearings, . . . that would indicate that there is reckless or intentional disregard for the truth or an intentional deception to the Court." *Id.* at 126–27. This

was a strong rejection of defense counsel's argument that the search warrant affidavit was tainted because it did not properly cite Ms. Love's statement. *See id.* at 110 (arguing that the affidavit misquoted Ms. Love because "she indicated several times that [Petitioner's] hand was right underneath the buttocks"). Next, the state trial court found that there was "sufficient cause to issue the warrants." *Id.* at 127. Although the trial court acknowledged that "a nude photograph may or may not in and of itself" be sufficient to create probable cause, it found that the propriety of the photograph was properly doubted "given the allegations of sexual conduct with [T.B.]," and the additional testimony about "inappropriate comments made about the other friends and other minors and an interest in sexual relationships with people of that age" was sufficient for law enforcement to conclude there was probable cause that Petitioner's computer contained evidence of a crime. *Id.* at 129.

Based on the content of the search warrant and the testimony from the suppression hearing, the Court finds that the state trial court reasonably applied the Fourth Amendment and reasonably determined the facts in light of the evidence presented at the suppression hearing. *See* 28 U.S.C. § 2254(d). The Amended Petition focuses on the fact that the search warrant affidavit contains no detailed allegations about what the nude picture of T.B. depicted. *See* Am. Pet. at 5 ("There was no allegation that the photo depicted any sexual or lewd or lascivious conduct or that it was associated with the acts alleged."). Petitioner (and defense counsel below) is correct that a photograph of a minor—even if he or she is completely naked—does not necessarily mean that the image itself is illegal. *See United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016) ("Lasciviousness is not a characteristic of the child photographed[.]") (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)); *see also United States v. Hill*, 322 F. Supp. 2d 1081, 1084 (C.D. Cal. 2004) ("Not all nude pictures of children are child pornography[.]"). But

this argument ignores the fact that the affidavit presented the picture in a much more vivid context. The affidavit <u>also</u> contains some of T.B.'s most visceral allegations against her father, namely that Petitioner "performed oral sex on her," that Petitioner "fondled her breasts, buttocks, and vaginal area," and that he forced T.B. to "manually [bring] him to sexual climax." Search Warrant Affidavit [ECF No. 13-1] at 36.

Given that there was a credible allegation of long-term sexual abuse,[8] it would be perfectly logical for law enforcement and a magistrate to infer that the nude image of T.B. on Petitioner's computer was related to this illicit sexual relationship and was not an unrelated, innocent image. *See, e.g.*, *United States v. Sanchez*, No. 21-cr-16, 2022 WL 1157733, at *7 (M.D. Fla. Mar. 22, 2022) (finding probable cause to search for child pornography in a defendant's home after the victim "claimed Sanchez continually abused her from when she was around five or six until she was twelve years old" and that the defendant "retained video and photographic recordings of the abuse"), *report and recommendation adopted*, 2022 WL 1155321 (M.D. Fla. Apr. 19, 2022). In short, the state court reasonably found that a magistrate had probable cause to determine: (1) Petitioner had sexually abused T.B., and (2) the nude image of T.B. on Petitioner's computer was related to that sexual abuse.

Petitioner also alleges that the search warrant affidavit's description of Ms. Love's testimony is a "deliberate falsehood" which renders the entire search warrant illegal. *See* Am. Pet. at 5. Both Petitioner and his trial counsel relied on the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), which held that when "a false statement knowingly and intentionally, or with reckless disregard for the truth, [is] included by the affiant in [a] warrant

---

[8]  The Eleventh Circuit had held that "repeated, detailed, and explicit" allegations of sexual abuse are sufficient for law enforcement to find that there is probable cause that the abuse occurred, and that "[t]here is no basis for holding that police officers cannot depend on the uncorroborated evidence of a child victim of sexual abuse for the request for a warrant." *Lowe v. Aldridge*, 958 F.2d 1565, 1571 (11th Cir. 1992).

affidavit, <u>and if the allegedly false statement is necessary to the finding of probable cause</u>," then the search warrant relying on that false information "must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 155–56 (emphasis added). Of course, as the *Franks* court made clear, suppression is only warranted when the false statements are <u>material</u> to the court's determination that probable cause existed. *See Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997) ("[E]ven intentional or reckless omissions will invalidate a warrant only if the inclusion of the omitted facts would have prevented a finding of probable cause.").

The trial court properly found that *Franks* did not apply for two reasons. *One*, the affidavit's description of Ms. Love's statement was not a "deliberate falsehood." The search warrant affidavit recounted that "Ms. Love observed Mr. Baker hugging [T.B.] While doing so, he was grabbing the child's buttocks and had his head against her breasts." Search Warrant Affidavit [ECF No. 13-1] at 35. Ms. Love's actual statement, in contrast, is that she observed "[T.B.] standing between [Petitioner's] legs, between his knees. And he had his hands around her legs, not back. And he was positioned with his hand right underneath her buttocks." Suppression Hr'g Tr. [ECF No. 14-3] at 96. Although the Court concedes the affidavit and statement are not identical—and even recognizes that the affidavit includes an additional allegation about Petitioner resting his head on T.B.'s breasts—the state court reasonably found that "there is [no] reckless or intentional disregard for the truth or an intentional deception to the Court." *Id.* at 127. The Eleventh Circuit has "explicitly limited the *Franks* rule to cases of perjurious or recklessly false statements or omissions . . . the rule does not apply to <u>negligent</u> misrepresentations or omissions." *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994) (emphasis in original). Petitioner has the burden of proof to show that the affiant "intentionally or recklessly" included any false statements

in a warrant application. *United States v. Flowers*, 531 F. App'x 975, 981 (11th Cir. 2013). The substance of Ms. Love's statement is that she observed T.B. and Petitioner embraced in a sexually suggestive manner, resembling that of a romantic couple and not that of a father and daughter. *See* Suppression Hr'g Tr. [ECF No. 14-3] at 96 ("[At] first glance, I thought it was a girlfriend. I couldn't believe it was T.B."). The affidavit recounted this essential point to the magistrate, and Petitioner has failed to demonstrate that the "insignificant" differences between Ms. Love's statement and the affidavit were either meaningfully false <u>or</u> a deliberate or reckless decision by law enforcement to mislead the magistrate. *See United States v. Ofshe*, 817 F.2d 1508, 1513 (11th Cir. 1987) ("Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant.").

*Two*, even if the statement was false, it was not material to find probable cause in this case. If a warrant application <u>does</u> contain false information, the proper procedure would be to "disregard those portions of the affidavit which the defendant has shown are arguably false and misleading[,]" and then determine if the affidavit, *sans* false statements, would be sufficient to find probable cause. *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) (citing *Franks*, 438 U.S. at 171–72). The affidavit will only be invalid if "the false statements were necessary to the finding of probable cause." *Id.* As discussed above, T.B. provided an extremely detailed and graphic account of the years of abuse she suffered at the hands of Petitioner. T.B. also alleged that Petitioner possessed at least one nude photo of her. This was clearly sufficient to establish probable cause, *see Lowe*, 958 F.2d at 1571, rendering Ms. Love's statement a mere surplusage of information that was not essential to secure a search warrant, *see Kapordelis*, 569 F.3d at 1309 ("Looking only at the remaining portions of the affidavit, the court will then determine whether including the omitted facts would have prevented a finding of probable cause."). Because the state

court reasonably concluded that the affidavit's description of Ms. Love's statement was neither misleading nor material, the Court finds that the state trial court's denial of the motion to suppress was proper.  Accordingly, Ground 1 is **DENIED**.

### B.  *Ground 2*

Petitioner alleges in Ground 2 that the trial court improperly denied his motion to sever six (6) counts that were added in an amended information that was filed "less than three (3) weeks before [Petitioner's] trial commenced on May 1, 2012.  Am. Pet. at 6.  Petitioner argues that trying these six new counts with the original twenty-one (21) counts was unduly prejudicial to him because "[t]here was virtually no time to investigate and prepare a defense to the new charges" and that the introduction of "highly prejudicial photographs of T.B." related to the original charges "had a high probability of contaminating the jury and affecting its ability to fairly determine Petitioner's guilt or innocence with regard to the newly added charges[.]"  *Id.* at 7.  Respondent argues that the state trial court properly denied the motion to sever since (1) "defense counsel was aware of these additional charges months before the amended information was filed," and (2) all the photos would have been introduced anyway as "*Williams*[9] rule evidence."  Response at 15.

The denial of a motion to sever sometimes "constitutes a denial of due process" under the Fourteenth Amendment.  *United States v. DiBernardo*, 880 F.2d 1216, 1226 (11th Cir. 1989) (citing *Byrd v. Wainwright*, 428 F.3d 1017, 1022 (5th Cir. 1970)).  Due process is offended "if the reviewing court can reasonably conclude that the judge should have granted the petitioner's motion for severance and that his action in denying the motion rendered the trial unfair."  *Smith v. Kelso*, 863 F.2d 1564, 1574 (11th Cir. 1989) (Tjoflat, J., concurring).  In Florida, a motion to sever offenses charged in the same information is appropriate when it is necessary "to promote a fair

---

[9]  *See Williams v. State*, 110 So. 2d 654 (Fla. 1959).

determination of the defendant's guilt or innocence of each offense[.]"  Fla. R. Crim. P. 3.152(a)(2)(A).  However, Florida courts are generally given wide discretion in granting motions to sever and their decisions "will not be disturbed absent a showing of abuse."  *Dupree v. State*, 705 So. 2d 90, 95 (Fla. 4th DCA 1998).

On April 17, 2012, Petitioner's trial counsel filed a motion to sever.  *See* Motion to Sever [ECF No. 13-1] at 42–43.  Counsel's sole argument is that "[t]he Defense did not have an opportunity to investigate the new allegations" and that "[s]everance of these new Counts will remedy the inability to investigate."  *Id.*  A hearing on the motion to sever was held three days later.  The State disputed defense counsel's characterization of the new charges, noting that defense counsel had been informed in February 2012 that the additional charges would either be admitted as *Williams* rule evidence or charged in a new information.  *See* Severance Hr'g Tr. [ECF No. 14-2] at 7 ("I think that since [defense counsel's] been aware that this was going on either *Williams* Rule or additional charges . . . he's had since February to try and produce or investigate these particular allegations.").  The State also noted that "all these allegations [happened when] the Defendant and the victim were alone together" and so it could not envision how or why defense counsel would need more time to investigate additional evidence or witnesses.  *Id.*  Defense counsel responded that the delay between him being informed about the charges and the amended information being filed was still prejudicial.  *See id.* at 9–10.  After hearing the arguments, the state trial court agreed with the State and denied the motion to sever.  *Id.* at 10.

The state trial court's denial of the motion to sever was reasonable and did not infringe upon Petitioner's constitutional rights.  Specifically, the Court finds that the denial of the motion to sever did not sabotage Petitioner's ability to prepare or investigate a defense, nor did it allow inadmissible, prejudicial evidence to be admitted during Petitioner's trial.  *First*, Petitioner does

not allege how denying the motion to sever infringed upon his ability to "investigate and prepare a defense to the new charges." Am. Pet. at 7. Although Petitioner claims in both his Amended Petition and Reply that his ability to investigate the new charges was curtailed, he does not explain <u>what</u> additional investigation was thwarted by the denial of the severance motion. *See id.*; Reply at 2. Petitioner certainly provides no evidence to rebut the State's argument below that the same witnesses and evidence for the original counts would apply to the new counts, or that Petitioner was aware of the possibility of the new counts being charged nearly two months earlier. *See* Severance Hr'g Tr. at 8 ("The State's position is [defense counsel's] had plenty of time to investigate. These additional charges are as a result of the deposition where [T.B.] said the abuse began earlier."). Ultimately, the argument that additional time was needed to prepare an adequate defense for the six new charges is speculative and cannot form the basis for habeas relief. *See United States v. Barsoum*, 763 F.3d 1321, 1337 (11th Cir. 2014) (rejecting an argument that the trial court improperly denied a motion to sever as "speculative" and noting that "conclusory allegations" are not sufficient to second-guess the denial of a motion to sever).

*Second*, the "prejudicial photographs" Petitioner refers to would have been admitted at trial <u>even if the counts had been severed</u>. Petitioner claims that photos only related to "the charges alleged in the original information" were introduced at trial and were instrumental in convincing the jury to convict Petitioner on the six new charges—*ergo*, had the motion to sever been granted, a jury would not have held those photos against Petitioner in a separate trial on the six newer offenses. Am. Pet. at 7. This is simply untrue under Florida law. The "*Williams* Rule" is a state evidentiary rule, codified as Fla. Stat. § 90.404(2)(a), which allows the admission of "[s]imilar fact evidence of other crimes, wrongs, or acts . . . when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident[.]" *Pridemore v. State*, 301 So. 3d 454, 458–59 (Fla. 4th DCA 2020) (quoting Fla. Stat. § 90.404(2)(a)). The Florida Legislature later <u>expanded</u> the applicability of the *Williams* Rule in cases involving "child molestation" by allowing "evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation" in cases where the defendant "is charged with a crime involving child molestation." Fla. Stat. § 90.404(2)(b).

In this case, it is clear that severing the counts would not have affected the admissibility of the photographs. All of the evidence at trial involved the sexual abuse of T.B. and the subsequent production of child pornography using T.B. as the model. Since the photographs would have been used to substantiate T.B.'s testimony and were related to a continuous period of sexual abuse, it was reasonable for the state trial court to conclude that any prejudicial effect from the photos could not have been cured by merely severing the newer counts from the older counts. *See McLean v. State*, 934 So. 2d 1248, 1259 (Fla. 2006) ("The similarity of the collateral act of molestation and charged offense is a critical consideration for the trial court[.]"); *Peralta-Morales v. State*, 143 So. 3d 483, 486 (Fla. 1st DCA 2014) (allowing the admission of "collateral acts of molestation [that] were committed approximately two years before the charged offense" in a case alleging acts of molestation against the defendant's biological daughter).[10] Since it was reasonable for the state trial court to deny Petitioner's motion to sever, the Court finds that Petitioner's due process rights were not violated. Ground 2 is therefore **DENIED**.

---

[10]   To clarify, the Court has not (and cannot) determined whether the photographs were definitively admissible under Florida's *Williams* Rule. *See McGee v. Inch*, No. 19-cv-23934, 2021 WL 602587, at *7 (S.D. Fla. Feb. 16, 2021) ("[T]o the extent Petitioner now challenges the application of the *Williams* Rule, his argument is misplaced because the *Williams* Rule is a state court evidentiary rule not governed by the Constitution or laws of the United States."), *aff'd*, No. 21-10710, 2022 WL 2315083 (11th Cir. June 28, 2022). Instead, the Court merely finds that it was reasonable for the state trial court to determine, under state law, that Petitioner was not prejudiced by denying the motion to sever because the evidence at issue would have been admissible under the *Williams* Rule in any event. *See* Severance Hr'g Tr. [ECF No. 14-2] at 4 ("[The Court:] [W]hat would stop the State from filing something to let [the photographs] in as *Williams* Rule[?]").

### C.   Ground 3

Turning to the first of the Amended Petition's four ineffective assistance of trial counsel claims, Petitioner alleges that trial counsel was ineffective for failing to argue that Counts 8, 10, 11, and 12 of the Information were barred by Florida's statute of limitations.   Am. Pet. at 8.[11] Petitioner also argues that a different statute of limitations was in effect at the time of the charged offenses, which means that the limitations period began when T.B. turned 16 (and not on the report date which occurred after T.B.'s 16th birthday); thus, the statute of limitations would have expired before October 9, 2012.   *See* Am. Pet. at 8 ("The Statute underwent a language change during this time period that changed the age at which the statute of limitations clock starts, from 16 years of age to 18 years of age."); Reply at 3 ("[T]he statute underwent a language change during this time period that changed the age at which the statute of limitations clock starts[.]"); *see also* Postconviction Motion [ECF No. 13-2] at 192–93 (arguing that "criminal acts under [Fla. Stat. § 800.04] . . . [do not] begin to run until the victim obtains 16 years of age (which in the instant case was on July 13, 2007)").   Respondent, naturally, believes that "these counts were all filed before the applicable statute of limitations expired."   Response at 16–17.

The State's Response to the Postconviction Motion, which is the presumptive reasoning of the Fourth DCA and state postconviction court, rejected Petitioner's claim and gave this explanation:

> The State charged Defendant with a felony of the first degree in [Counts 8, 10, 11, and 12].   This meant that the State had four years from the report date to file these charges against Defendant. § 775.15(2), Florida Statutes.

---

[11]   Petitioner also argues that counsel should have objected to Counts 1 and 9 of the Information for the same reason.   *See* Am. Pet. at 8.   However, this part of Ground 3 is moot because the state postconviction court already vacated Counts 1 and 9.   *See* Order Denying Postconviction Motion [ECF No. 13-2] at 268 ("The Conviction and Sentence is hereby VACATED in counts one and nine of the Information.").

> The State had up to October 9, 2012, to file these charges.  The State
> filed these charges on April 13, 2012.  Therefore, the State properly
> charged Defendant with these offenses within the time limitations
> period based on the report date of October 9, 2008.

State's Response [ECF No. 13-2] at 237.  In adopting this reasoning, the state court clearly repudiated Petitioner's statutory argument that the statute of limitations period began to run when T.B. turned sixteen years old on July 13, 2007, and instead agreed with the State that the limitations period began when T.B. reported Petitioner's actions to the police on October 9, 2008.  The Court cannot second-guess the state court's decision to interpret the scope and retroactivity of the relevant state statute of limitations.  *See McCullough*, 967 F.2d at 535 ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").[12]  Because the Court is bound by the state court's interpretation of state law, it must conclude that the state court reasonably found that counsel was not ineffective since a statute of limitations argument would have been meritless.  *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]").  Accordingly, Ground 3 is **DENIED**.

---

[12]  That being said, the Court finds the state court likely applied the right limitations period.  Petitioner is correct that "the statute of limitations that applies in a criminal case is the one that was in effect at the time of the incidents giving rise to the charges."  *Torgerson v. State*, 964 So. 2d 178, 179 (Fla. 4th DCA 2007).  However, Counts 8, 10, 11, and 12 of the Information charged Petitioner with conduct that took place "on or between the 13th day of July, 2000 and the 12th day of July 2003[.]"  Second Information [ECF No. 13-1] at 16–17.  It's true that, on July 13, 2000, the statute of limitations for the charged offenses would begin to run "when the victim has reached the age of 16 or the violation is reported . . . whichever occurs earlier."  Fla. Stat. § 775.15(7) (2000).  Nevertheless, by July 12, 2003, the statute of limitations was amended to reflect the current language—which changed the applicable trigger date to the victim's <u>eighteenth</u> birthday.  *See* Fla. Stat. § 775.15(7) (2003).  Because the "final date charged in the information" is what is used in calculating the statute of limitations, the state court appears to be correct in relying on the 2003 version of the statute of limitations instead of the 2000 version.  *Torgerson*, 964 So. 2d at 179.

### D.  Ground 4

In Ground 4, Petitioner avers that trial counsel was ineffective for "failing to investigate Petitioner's belief that an employer based alibi could be developed and utilized at trial."  Am. Pet. at 9.  According to Petitioner, the State's computer forensic expert "provided trial counsel with dates and times associated with when the charged photographs were placed on the family computer.  These dates and times May 5, 2008 @ 8:59 AM and April 16, 2008 @ 9:28 AM were dates/times that Petitioner knew he had been at work."  *Id.*  While Petitioner agrees that counsel obtained employment records to corroborate this alibi, he alleges that counsel still failed to fully develop this alibi defense and utilize it at trial.  *See id.* at 9–10.

Respondent provides three counterarguments: (1) the employment records do not provide an alibi since "uploading the photographs is not an element" of any of the charged offenses, (2) the employment records "do not specify what time [Petitioner] reported to work on those dates, and they do not provide shift information.  Therefore, they do not establish that Petitioner was at work when the photographs were uploaded[,]" and (3) Petitioner fails to demonstrate prejudice under *Strickland* because the alibi would not have overcome the substantial evidence of Petitioner's guilt.  Response at 18–19.

Although defense counsel "has a general duty 'to reasonably investigate avenues of defense (or make a reasonable decision to not do so)[,]'" the Court must defer to counsel's strategic decision to pursue or ignore certain defenses.  *Martinez v. Sec'y, Fla. Dep't of Corr.*, 684 F. App'x 915, 923 (11th Cir. 2017) (quoting *Blankenship v. Hall*, 542 F.3d 1253, 1273 (11th Cir. 2008)).  This presumption can be overcome if the petitioner "can show that 'no competent attorney' would have failed to pursue the defense, given the facts known to counsel at the time."  *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)).  Even if the petitioner meets this heavy burden, he must also

demonstrate some "reasonable probability that the alibi [defense] would have changed the outcome of [his] trial." *Wellington v. Moore*, 314 F.3d 1256, 1263 (11th Cir. 2002).

The Court agrees with Respondent's second argument in finding that the state postconviction court reasonably rejected the possibility of a successful alibi defense. In reviewing the employment records, the Court notes that they only list the number of hours Petitioner worked in a given day—they do not specify what time of day Petitioner worked. *See* Employment Records [ECF No. 13-1] at 81–85; *see also* State's Response [ECF No. 13-2] at 243 ("These records do not, however, indicate the shift, in order to specify the time, Defendant worked on those days. As such, Defendant has not demonstrated he had a valid alibi defense based on the contents of these records."). An alibi defense is toothless unless it can pinpoint the defendant's location at the specific time an incriminating event occurred. *See Pasha v. State*, 225 So. 3d 688, 710–11 (Fla. 2017) (explaining that, under Florida law, "[e]vidence in support of an alibi 'must be such as to render impossible that the crime could have been committed by the party that claims that he was not present'") (emphasis in original) (quoting *Bacon v. State*, 22 Fla. 51, 77 (1886)).

While the employment records may have demonstrated that Petitioner worked on the same day that incriminating pictures were uploaded on the family computer, it would not have proven that Petitioner was unable to access the computer during the times listed in the forensic report. *See Lott v. Att'y Gen, Fla.*, 594 F.3d 1296, 1302 (11th Cir. 2010) ("This lack of chronological specificity would have rendered Jones of minimal value as an alibi witness. Further, . . . Jones could only at best corroborate a small portion of the time for which Lott needed an alibi[.]"). Since the employment records had minimal (if any) value in proving an alibi, there is no "reasonable probability" that the outcome of the case would have been different if counsel pursued a defense based on these records. *See Strickland*, 466 U.S. at 694.

### E.  Ground 5

Ground 5 of the Amended Petition asserts that trial counsel misadvised Petitioner about the effect of a state law which caused Petitioner not to exercise his right to testify at trial. According to Petitioner, he wanted to testify about "his newly discovered alibi defense"—that Petitioner was at work when the nude photographs of T.B. were placed on the family's computer. Am. Pet. at 11.  However, defense counsel informed Petitioner that he had not filed "a timely Notice of Alibi" prior to trial, precluding Petitioner from providing testimony in support of any alibi defense.  *Id.*  Respondent contends that Petitioner's proposed testimony "was not an alibi defense[,]" and therefore not subject to the "Notice of Alibi" requirement.  Response at 20.  In addition, Respondent argues that the record proves that Petitioner voluntarily agreed to waive his right to testify and that he did so having full knowledge of the benefits and consequences to waiving that right.  *Id.*

A defendant's right to testify in his or her own defense is a fundamental constitutional right which "has sources in several provisions of the Constitution."  *See Rock v. Arkansas*, 483 U.S. 44, 51–52 (1987) ("Even more fundamental to a personal defense than the right of self-representation, . . . is an accused's right to present his own version of events in his own words.").  Although a defendant's choice to testify "unquestionably has tremendous strategic importance[,]" defense counsel does not have the power to either compel or prevent his client from testifying.  *United States v. Teague*, 953 F.2d 1525, 1532–33 (11th Cir. 1992) (en banc).  Instead, "[d]efense counsel bears the primary responsibility for advising the defendant of his right to testify or not testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide."  *Id.* at 1533.  If "the defendant's right to testify was violated by defense counsel," then the magnitude of that constitutional error will be analyzed under *Strickland*'s two-pronged ineffective

assistance of counsel test. *Id.* at 1534. First, the court must determine whether counsel performed deficiently by depriving the defendant "of the ability to choose whether or not to testify in [sic] his own behalf." *Id.*; *see also Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999) ("Where counsel has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone . . . defendant clearly has not received reasonably effective assistance of counsel.") (cleaned up). The defendant must then show that there is a "reasonable probability that the results of the trial would have been different had [the defendant] testified in his own defense." *Lee v. Culliver*, 300 F. App'x 689, 691 (11th Cir. 2008).

Without deciding whether defense counsel provided correct advice about Florida's "Notice of Alibi" requirement, the Court finds that it was reasonable for the state postconviction court to deny this claim based on *Strickland*'s prejudice prong. Petitioner states that, had he testified at trial, he would have testified about his "newly discovered alibi defense." Am. Pet. at 11. In other words, that he was at work when some of the key, incriminating photos were placed on the family computer. Am. Pet. at 11. Presumably, Petitioner would have filled in the gaps that his employment record could not cover by testifying about the specific times he was at work. In doing so, Petitioner argues that he could have "shifted culpability to the victim who was home to put the pictures on the computer[.]" *Id.* In denying this ground, the state postconviction court adopted the State's argument that Petitioner was not prejudiced since his testimony would "not [establish] he had a viable alibi defense in this case." Postconviction Motion [ECF No. 13-2] at 256.

The Court does not believe that this testimony would have impacted the jury's verdict for several reasons. *First*, as Respondent repeatedly argues, placing the pornographic images on the computer is not an element of any crime Petitioner was charged with. The State only had the

burden of proving that Petitioner "possess[ed], control[led], or intentionally view[ed]" those images and that those images were made after Petitioner "employ[ed], authorize[d], or induce[d]" T.B. to engage in a "sexual performance."  Fla. Stat. §§ 827.071(2), (5).  Petitioner's proposed testimony would not have negated any of these elements.  *Second*, there was other, extremely compelling, testimony at trial indicating that it was Petitioner—not the victim—who created these pornographic images.  The victim herself, of course, testified about years of sexual abuse that she suffered at the hands of her father.  *See generally* Trial Tr. [ECF No. 14-8] at 17–78.  One of Petitioner's friends, Robert Florczak, stated that "Ron told me that he had taken some nude pictures of T.B."  Trial. Tr. [ECF No. 14-7] at 63.

Finally, Petitioner himself appeared in at least one of the nude photos of T.B., which would substantially contradict Petitioner's theory that the victim herself produced and created these images without his knowledge.  *See* Trial Tr. [ECF No. 14-8] at 29 ("[T.B.]: That's me.  And that's a reflection of Ronald."); *id.* at 63 ("[T.B.]: With respect to the photos, [Petitioner] told me that he had taken them."); *id.* at 75 ("[Q:] How do you know [Petitioner] took [the pictures]?  A: He's in the reflection with the camera.  Q: And he told you he took them? . . . A: Yes.").  Because there is "no reasonable probability that the results of the trial would have been different if [Petitioner] testified in his own defense[,]" the Court finds that this claim was reasonably denied by the state courts.  *Lee*, 300 F. App'x at 691; *see also McKinnon v. Sec'y, Dep't of Corr.*, No. 15-cv-1350, 2018 WL 11314066, at *9 (M.D. Fla. July 17, 2018) (finding that petitioner was not prejudiced by the misadvice of counsel since "nothing in the record supports [the petitioner's] version of events" and "the evidence admitted against him was strong").

### F. *Ground 6*

Petitioner alleges in Ground 6 that "[t]rial counsel provided ineffective assistance by failing to investigate a nine hour break in the chain of custody of Petitioner's seized family computer." Am Pet. at 12.  Petitioner claims that no police officer "was able to account for the computer's whereabouts" between 6:45 AM and 6:45 PM and this gap in the chain of custody indicated "probable tampering." *Id.* at 13.  Respondent counters that the trial testimony establishes there was no break in the chain of custody and, even if there was, any argument that the computer was tampered with during this gap in time was purely speculative.  Response at 21–22.  This argument largely parrots the state postconviction court's conclusion that there was no evidence of a break in the chain of custody or of tampering.  *See* Postconviction Motion [ECF No. 13-2] at 254–55.

The Court finds the disposition of this claim was reasonable.  Detective Olczak's testimony at trial was that "I took the computer, collected from the home.  And then made an appointment to get it over to [Jean Burnett] for analysis."  Trial Tr. [ECF No. 14-7] at 93–94.  This testimony confirms that the computer was in Detective Olczak's possession from the moment he collected it from Petitioner's house until it was delivered to Jean Burnett.  Even if there was some gap in the chain of custody, Petitioner has failed to show prejudice based on counsel's failure to object to this gap.  Florida law is clear that "a broken chain of custody alone is [not] enough by itself to establish probable tampering."  *Overton v. State*, 976 So. 2d 536, 552 (Fla. 2007).  Petitioner advances a theory that "there was evidence of data manipulation," Am. Pet. at 13, but Petitioner has not provided "any clear and convincing evidence" of tampering or data manipulation that would allow the Court to override the state postconviction court's conclusion that there was no evidence of foul play after the computer was seized by law enforcement, *see* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant

to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner[.]"). Since the chain of custody gap (if there even was one) was immaterial to the outcome of Petitioner's case, Ground 6 is **DENIED**.

### G. *Ground 8*

Finally, Petitioner argues that appellate counsel was ineffective for failing to argue on appeal that the trial court improperly denied a motion to continue the trial. The continuance was requested so that defense counsel "could obtain employer records" which would support Petitioner's "alibi" defense that he was not at home when the incriminating pictures were placed on the family computer. Am. Pet. at 16; *see also* Trial Tr. [ECF No. 14-9] at 23–24 ("And this information, if true, is relevant in the sense it's not an alibi. But it raises reasonable doubt that the Defendant claims [Petitioner] might have been working when a portion of them were posted, the pictures."). The Court finds that the denial of this claim was reasonable for the same reasons as Grounds 4 and 5: the employment records would not have presented a valid "alibi" defense and could not have had a reasonable probability of affecting the outcome of Petitioner's trial. *See Strickland*, 466 U.S. at 694.[13] Ground 8 is therefore **DENIED**.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

---

[13] Had the Court reviewed Ground 7 on the merits, it too would have been denied for the same reasons as Ground 8.

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA").   A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a petitioner must obtain a COA.  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the correctness of the Court's denial of Grounds 1, 2, 3, 4, 5, 6, and 8, nor would any reasonable jurist second-guess the Court's ruling that Grounds 7 and 9 are procedurally defaulted.  Accordingly, a COA must be denied on all claims.

## CONCLUSION

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Amended Petition [ECF No. 7] is **DISMISSED in part** and **DENIED in part**.  Grounds 7 and 9 of the Amended Petition are **DISMISSED** as procedurally defaulted.  All other claims in the Amended Petition are **DENIED**.  Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**.  All deadlines

are **TERMINATED**, and any pending motions are **DENIED** as moot.  Accordingly, this case is

**CLOSED**.

       **DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of August, 2022.

                             **RODOLFO A. RUIZ II**
                             **UNITED STATES DISTRICT JUDGE**

cc:      Counsel of record

            Ronald Baker
            DC # L95352
            Everglades Correctional Institution
            Inmate Mail/Parcels
            1599 SW 187th Avenue
            Miami, FL 33194
            PRO SE